# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| MARCI JONES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CASE NO. 4:14CV366 |
| | § | |
| ANDY ANDERSON and | § | |
| NANCY ANDERSON d/b/a | § | |
| BAR LO KENNELS GROOMING | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 31). As set forth below, the Court finds that the motion should be GRANTED and Plaintiff should take nothing by her claims.

Plaintiff was employed by Noble Finance. Noble Finance rented a commercial building from Defendants Andy and Nancy Anderson. Plaintiff claims that, during the course of her employment, she suffered personal injuries from being exposed to asbestos, mold and dead animals. Plaintiff's suit against Defendants includes claims for her personal injuries as well as loss of earning capacity and the cost of medical treatment.

In their motion, Defendants argue that they are entitled to summary judgment as a matter of law because they were not the possessor of the property and thus owed no duty to Plaintiff. Defendants further argue that, even if they owed a duty to Plaintiff, Plaintiff's claims fail because

1

she cannot meet her burden regarding causation and damages as they relate to her asbestosis claim as well as her claim involving mold and other toxins. Defendants also argue that they are entitled to judgment as a matter of law because all of Plaintiff's claims fail for the reason that limitations had passed. Finally, Defendants argue that Plaintiff cannot produce any evidence that the Defendants are liable in their capacity as the proprietors of "Bar Lo Kennels Grooming."

Attached to Defendants' motion are the following: (1) Exhibit A: Real Estate Lease; (2) Exhibit B: Plaintiff's Interrogatory Answers; (3) Exhibit C: Affidavit of Nancy Anderson; (4) Exhibit D: Affidavit of Defendant Andy Anderson; (5) Exhibit E: Excerpt from History and Physical Report of Dr. Dennis M. Parker, MD; (6) Exhibit F: Excerpt from "Independent Medical Examination" performed by John W. Ellis, M.D; (7) Exhibit G: Excerpt from report prepared by William J. Rea, M.D.; (8) Exhibit H: Facsimile and Report address to Antionette Sofia labeled "Mold Test Results"; (9) Exhibit I: Texas State Department of Health Services "Renovation/New Construction Inspection Checklist"; and (10) Exhibit J: Paris Regional Health Center Emergency Room Records. *See* Dkt. 31-1–31-10. Defendants also attach to their summary judgment reply the following: (1) Reply Exhibit A: handwritten letter dated May 2, 2012 and signed by Marci Jones; (2) Reply Exhibit B: two-page note, in Plaintiff's handwriting, dated May 12, 2012; (3) Reply Exhibit C: one-page document entitled "Request for Approval" signed by Plaintiff Marci Jones and dated May 15, 2012; and (4) Affidavit of R. Wesley Tidwell. *See* Dkt. 40-1– 40-4.

Plaintiff has filed a response in opposition. In response, Plaintiff offers the following summary judgment evidence: (1) Exhibit 1-Affidavit of John Ellis, MD and report; (2) Exhibit 2-OSHA Citation; (3) Exhibit 3-Affidavit of Marci Jones with photos; (4) Exhibit 4-Mold Armor

2

report; (5) Exhibit 5-Affidavit of William Rea, MD with reports. Dkt. 37-1. To her surreply, Plaintiff attaches the following: (1) Surreply Exhibit 1: Paris Medical Center record; (2) Surreply Exhibit 2: Excerpt of Nancy Anderson Deposition; and (3) Surreply Exhibit 3: Excerpt of Andy Anderson Deposition. *See* Dkt. 43-1–43-3.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir.

3

1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

**ANALYSIS**

The Court first addresses Defendants' argument that the statute of limitations bars Plaintiff's claims since it would dispose of all claims, if applicable.

In Texas, causes of action based on personal injury must be brought within two years of accrual, which is the day the person sustains the injuries. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *KPMG Peat Marwick v. Harrison Cnty. Housing Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999); *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.– Dallas 1994, writ denied) (strict products liability).

Plaintiff's suit was filed on June 6, 2014. Therefore, if her claims accrued prior to June 6, 2012, they are time barred.

4

Plaintiff argues that she did not learn of her injuries until June 16, 2012 and that the discovery rule saves her claims. The discovery rule allows for the accrual of a cause of action to "be deferred if 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). However, the Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Id.* The nature of the injury is inherently undiscoverable when it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 313-14 (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001)). As the Fifth Circuit has explained of the discovery rule under Texas law,

> The rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action, not until she realizes that the facts do support a cause of action. It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once a claimant learns that she has been injured, the burden is on her to determine whether she should file suit.

*Colonial Penn Ins. v. Mkt. Planners Ins. Agency, Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) (internal quotation marks omitted). Although issues regarding the discovery rule generally involve issues of fact for a jury, it may be determined as a matter of law if reasonable minds could not differ. *Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998). Under Texas law, the defendant bears the burden of negating the discovery rule on summary judgment. *Childs*, 974 S.W.2d at 44.

As to her alleged injuries, Plaintiff relies on the Texas Supreme Court's holding in *Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998). In *Childs*, the Texas Supreme Court held:

> We therefore hold that the approach that best balances the interests implicated in latent occupational disease cases is one that defers accrual until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. Thus, in cases involving latent occupational diseases, "discovery of the injury" should not be equated with a plaintiff's discovery (1) of the precise name of the disease that is causing his symptoms or (2) that the disease is permanent. The seriousness of a personal injury need not be fully apparent or even fully developed in order to commence the statute of limitations.

*Childs*, 974 S.W.2d at 40-41. Under *Childs*, "[a] plaintiff does not need to know the seriousness of the injury or have a confirmed medical diagnosis for a cause of action to accrue" but "[t]here must be some objective verification of a causal connection between the occupational exposure and the plaintiff's injury." *Zacharie v. U.S. Nat. Res., Inc.*, 94 S.W.3d 748, 753 (Tex. App. – San Antonio 2002, no pet.). "[A] diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms is, standing alone, insufficient to establish accrual as a matter of law." *Childs*, 974 S.W.2d at 43.

Plaintiff argues that her alleged injuries and poisoning of her body were latent, undiscoverable injuries until they could be diagnosed by medical experts having particular knowledge in the field of environmental medicine. The Court finds that Plaintiff's interpretation of the summary judgment record and governing authorities is not so simple. In evaluating Defendants' limitations arguments, the Court has reviewed the summary judgment evidence for anything occurring **prior to June 6, 2012**.

In her sworn summary judgment affidavit, Plaintiff claims (emphasis added regarding date):

- "I sought medical treatment at the emergency room in Paris for stress. On **January 4, 2011**, I complained of chest pain and discomfort and was diagnosed with hypertension, chest pain, and stress/anxiety. I was never told by any doctor or physician that any of my problems were associated with fungus, mold, or other conditions in the building." Dkt. 37-3 at ¶9.

- "On **June 5, 2012**, a constable from the city of Paris was in our office. She laid a piece of white paper on a desk and as she leaned over to pick up the papers, she noticed that there were little dots on the paper; and on closer inspection noticed that the dots were moving around. Ms. Sophia and I had red marks where it appeared the bugs might be biting us. I attributed this to the filth overhead." Dkt. 37-3 at ¶13.

- "In **May, 2012**, I was obtaining bids for vents, to clean up the bird feces, clean up the filth and renovate the building...we found what appeared to be more molds, and dead and rotting birds inside the air-conditioning vents and debris from the space above our heads around the vents which forced air directly into our office space." Dkt. 37-3 at ¶¶14-15.

Further, according to Plaintiff's interrogatory responses (emphasis added regarding date):

- Plaintiff spoke with an individual at the City of Paris Fire Department "regarding concerns for [her] health regarding the condition of the building located at 118 Clarksville Street in Paris, Texas" on **April 30, 2012** (regarding "terrible bird feces problem") and **May 2, 2012**. Dkt. 31-2 at 4.

- Plaintiff spoke with an individual at the State of Texas Health Department "regarding complaints and concerns for her health regarding the condition of the building located at 118 Clarksville Street in Paris, Texas" on **May 24, 2012** and **June 1, 2012**. Dkt. 31-2 at 4-5. Plaintiff further states that she "told them their responsibility ot have asbestos tests done by law" on **June 1, 2012**. Dkt. 31-2 at 4-5.

- Plaintiff spoke with an individual at the U.S. Department of Labor Occupational Safety and Health Administration "regarding complaints and concerns for her health regarding the condition of the building located at 118 Clarksville Street in Paris, Texas" in **June 2012**. Dkt. 31-2 at 3.

7

- A specific date in June is not given, however, Plaintiff states that she inquired "in regard to the asbestos exposure" and "previous possible exposure" and complained of "Nancy Anderson's intention and deliberate refusal to give us the results of the asbestos test." *Id.*

- Plaintiff "spoke with a lady (**don't recall name or date**)" at the City of Paris Health Department regarding bird feces and was told they could not help. Dkt. 31-2 at 4.

In support of her discovery rule arguments, Plaintiff offers her summary judgment affidavit in which she alleges:

- "On June 16, 2012, I again sought treatment at the emergency room in Paris. This was the date when a very first physician gave me a connection between the condition of the building 'might' be causing the chest pain I had on that date and advised me I may have 'asbestosis.' I also advised the physician on that date that I felt better when I was off work. On that date I also complained of being tired. I was advised that I had hypertension. I also had urinary tract infections which I attributed to being a female. No connection was made at that time between the urinary tract infections and the condition of the building." Dkt. 37-3 at ¶9.

Plaintiff further claims that she "was not able to really put it all together that I had suffered exposure to toxic molds, asbestos exposure, and had suffered illnesses and injury as a result of the exposures to bird feces, dead birds, asbestos, mold, fungus, and dust-born asbestos and molds until after I was terminated and when l saw Dr. John. Ellis." Dkt. 37-3 at ¶30. Although Plaintiff says in her interrogatories that she did not receive test results regarding asbestos until June 14, 2012 or the tests results regarding mold until June 19, 2012, her interrogatories clearly state that she first discovered bird feces and rotting and dead animals in **May 2012**. Dkt. 31-2 at 6.

In isolation, Plaintiff's interrogatory responses and affidavit may evidence nothing more than a suspicion by Plaintiff such that reasonable minds might differ as to whether a reasonable person

8

in Plaintiff's position would have been on notice that she suffers from some injury and she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related.

However, Defendants also attach to their summary judgment reply three documents which are critical to the Court's limitations analysis here. First, Defendants offer a two-page, hand-written letter addressed to Nancy and Andy Anderson, signed by Plaintiff and dated **May 2, 2012** in which Plaintiff complains about the condition of the building including specific references to "mold & bird poop" and states, "we are getting extremely sick from breathing it." Dkt. 40-1. Defendants also offer a two-page note, which Defendants allege is in Plaintiff's handwriting, dated **May 12, 2012** which purports to evidences a conversation that Plaintiff alleges to have had with Defendant Andy Anderson, in which she claims to have "showed him the black mold in ...vent area, told him our concern for bird crap, mold and possible asbestos" and that "he said the mold and other stuff wont [sic] hurt our breathing we are just trying to start trouble." Dkt. 40-2. Defendants also attach a one-page document titled "Request for Approval" signed by Plaintiff and dated **May 15, 2012**. In the request submitted on behalf of her employer, Plaintiff requests that the premises be tested for mold and asbestos and asks for the vents to be cleaned "ASAP!," stating "We are sick - for our health we need this done" and "our health is at risk!" Dkt. 40-3 at 2.

Plaintiff has not challenged the authenticity of these exhibits or objected to their admission in any way. Nor has Plaintiff argued that the documents were not created on the dates stated – all dates prior to June 6, 2012. Indeed, these documents were apparently produced by Plaintiff in this case in conjunction with her initial disclosures. *See* Dkt. 40-4.

Instead, Plaintiff argues that even though she made complaints regarding mold when admitted to the emergency room, her claims did not accrue until she was diagnosed and that her letters evidence nothing more than "mere suspicion" which is not enough to trigger limitations. The Court disagrees.

Critically, under *Childs*, "the accrual of a cause of action is not dependent on a confirmed medical diagnosis; a plaintiff whose condition has not yet been affirmatively diagnosed by a physician can have or, in the exercise of reasonable diligence could have, access to information that requires or would require a reasonable person to conclude he likely suffers from a work-related illness." *Childs v. Haussecker*, 974 S.W.2d 31, 42 (Tex. 1998). *See also In re Mirapex Products Liab. Litig.*, 735 F. Supp. 2d 1113, 1119 (D. Minn. 2010) (claim accrual under Texas law does not require an epidemiological study). A cause of action will nevertheless accrue "if the absence of due diligence is responsible for the deficiency." *Childs v. Haussecker*, 974 S.W.2d 31, 42 (Tex. 1998) ("Thus, while a diagnosis of a latent occupational disease would be sufficient to start the limitations period, a final diagnosis is not always necessary before a cause of action can accrue."). In other words, the failure to failure to obtain verification cannot be "occasioned by a lack of due diligence" on behalf of a plaintiff asserting the discovery rule in a latent occupational disease case. *Zacharie v. U.S. Nat. Res., Inc.*, 94 S.W.3d 748, 753 (Tex. App. - San Antonio 2002, no pet.) (citing *Childs*, 974 S.W. 2d at 43). As one Court applying Texas law explained, "'[o]bjective verification' does not mean a scientific study is required before a claim will accrue; it simply means the limitations clock does not start running the first time a plaintiff entertains subjective, unverified suspicions about what is causing his illness." *In re Mirapex Products Liab. Litig.*, 735 F. Supp. 2d 1113, 1119 (D. Minn.

2010) ((rejecting argument that Texas has adopted a test of "objective verification" of causation before a claim accrues), *aff'd sub nom. Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833 (8th Cir. 2011).

There is no question here that Plaintiff's written documents evidence something more than her entertaining subjective and unverified suspicions. She was representing to others no later than May 2012 that her working conditions were making her and others sick.

Regardless of what her summary judgment affidavit and interrogatory responses say (both statements made for the purposes of this litigation, the Court notes), the three documents offered in Defendants' summary judgment reply were written by Plaintiff during the time period at issue. *See Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 2011 WL 3667435, 3 (5th Cir. 2011) ("a self-serving affidavit, without more evidence, will not defeat summary judgment.") (citing *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 531 & n. 49 (5th Cir. 2005)); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted)). There is no fact issue that, prior to June 6, 2012, Plaintiff concluded (not merely suspected) that her work conditions were causing her to be sick. And there is nothing in the record that would that she exercised any due diligence to obtain any objective verification of the suspected occupational exposure.

Not only did Plaintiff state in May 2012 that her working conditions were making her sick, her medical records (and even her own expert report) indicate a lack of diligence on her part. According to the record, Plaintiff reported chest pain and discomfort during an emergency room visit in January 2011 (more than 3 years before she filed suit), and while the records do not indicate a suspicion of "toxic" substances, she attributed it to "stress at work." Dkt. 31-10 at 2. Further, although she did not visit the emergency room for the second time until June 16, 2012, she reported that her chest and lungs had been hurting because of "asbestosis, bird droppings mold...feels like in lungs - lungs don't feel right," that it "occ [sic] feels better when leave[s] work" and that she had been experiencing this "off & on [for] several months." Dkt. 31-10 at 5.

One of her expert reports (which characterizes her as a "poor historian") indicates that, by her own report, by 2011 "her [respiratory] symptoms would get better when she left the office and then would get worse at again when she went back to the office" and that "[s]he clearly felt better at home." Dkt. 31-5 at 2 (report of Dennis M. Parker, M.D.). Although this report was prepared in April 2014 (shortly before the filing of this lawsuit), Plaintiff reported to her physician that she suspected her symptoms were work-related as early as 2011. Yet, there is nothing in the record, other than a single visit to the emergency room in the first two weeks of 2011, to indicate that she used any sort of diligence to determine the cause of her symptoms which continued, according to her "on and off" until June 2012 when suit was filed.

Defendants have shown through the summary judgment record that Plaintiff had "access to information that would lead a reasonable person to believe that [s]he likely suffers from a work-related injury" before June 6, 2012. *King v. Brinkmann Invest., Inc.*, 2006 WL 2447577, at *3 (Tex.

App. - Austin 2006, no pet.). Defendants have shown that Plaintiff's symptoms manifested themselves to a degree or for a duration that not only would put her on notice – but in fact did put her on notice and caused her to conclude and represent to others – that she suffered from an injury and that the injury was related to her working-conditions.

The summary judgment record evidences more than a mere suspicion, and reasonable minds could not differ that prior to June 6, 2012, Plaintiff had discovered that there was a causal connection between Plaintiff's health symptoms and her working conditions. For this reason, the Court finds that Plaintiff's claims are barred by the statute of limitations.

The Court notes that Plaintiff has filed a Motion for Leave to File an Amended Complaint (*see* Dkt. 66). Plaintiff seeks to amend her complaint "to clarify (1) her claim of negligence, which includes a premises liability claim as a branch of the same tree; (2) claim addressing the discovery rule; (3) to more fully allege in the complaint that the statute of limitations does not apply to the instant case." Plaintiff argues that there is good cause to amend her complaint out of time (and on the eve of a pretrial setting) because she was not aware of the need for clarification until Defendants proposed certain language for the jury charge. The Court finds that such is not good cause to amend the complaint. The arguments raised by Defendants are not new and all parties have had adequate opportunity to brief them.

In any event, the Court has pierced the pleadings here to determine whether the summary judgment evidence supports Defendants' statute of limitations defense and Plaintiff's reliance on the discovery rule. Plaintiff's proposed amendment would not alter the Court's summary judgment analysis. The motion (**Dkt. 66**) is thus **DENIED**.

Because the Court finds there is no fact issue for trial and does not reach the matter of causation, Defendants' Amended Motion and Memorandum in Support of Motion to Exclude Testimony of Plaintiff's Experts William Rea, M.D. and John W. Ellis, M.D. (**Dkt. 33**) and Plaintiff Marci Jones' Amended Objection and Motion to Strike Defendants' Expert Witnesses (**Dkt. 34**) and **DENIED as MOOT**. Further, Defendants' Objections to Plaintiff's Pretrial Disclosures (**Dkt. 48**), in which Defendants object to Plaintiff's pretrial disclosures, including exhibits to be admitted and deposition testimony to be played at the time of trial, and Plaintiff Marci Jones' Amended Response to Defendants' Pretrial Disclosures (**Dkt. 54**) in which the plaintiff, Marci Jones and objects to some of Defendants' proposed trial witnesses and exhibits, are **DENIED as MOOT**. Defendants' Motion in Limine (**Dkt. 47**) is also **DENIED as MOOT**.

Defendants' Motion for Summary Judgment (**Dkt. 31**) is **GRANTED**, and Plaintiff shall take nothing by her claims.

**SO ORDERED.**

SIGNED this 31st day of August, 2016.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE